UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARIA A. CIRCELLO AND MARY OLIVER,

                          Plaintiffs,

    -against-

COMMUNITY MUTUAL SAVINGS BANK,

                       Defendant.
-----------------------------------------------------------------X

WP4
07 CIV 6933

Index No.: _____

**VERIFIED COMPLAINT**

**PLAINTIFFS DEMAND TRIAL BY JURY**

Plaintiffs Maria A. Circello (hereinafter "Circello") and Mary Oliver (hereinafter "Oliver"), by their attorneys, Fontana & Broderick, LLP, complain of defendant Community Mutual Savings Bank (hereinafter "CMSB") as follows:

### NATURE OF ACTION

1. This is an action to remedy discrimination based on age and retaliation in the terms, conditions and privileges of employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e, et seq.; and the New York State Human Rights Law, New York Executive Law §290 et seq.

2. In addition, this action is brought pursuant to the Age Discrimination in Employment Act of 1967("ADEA"). 29 U.S.C. §621 et seq.

3. Finally, this action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 et seq., in that defendant failed and intentionally refused to pay time and a half for hours worked in excess of 40 hours in a single week.

4. Plaintiffs seek declaratory relief, compensatory and punitive damages, liquidated damages, overtime compensation and other appropriate legal and equitable relief pursuant to the relevant statutes.

## JURISDICTION AND VENUE

5. All discriminatory employment practices and violations of the ADEA, Title VII and the FLSA alleged herein were committed within the jurisdiction of the United States District Court, for the Southern District of New York.

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § §1331 and 1343(a)(3), and 29 U.S.C. §621 et seq. Plaintiffs' New York State claim is interposed pursuant to the Court's pendent jurisdiction.

7. Venue is proper pursuant to 29 U.S.C. §1391(b)(2) in that the events giving rise to the claims occurred in the Southern District.

8. Plaintiffs have satisfied all conditions precedent to instituting this lawsuit by timely filing a complaint with the Equal Employment Opportunity Commission and receiving a right-to-sue letter (see Exhibit "A"). This action was commenced within 90 days of receipt of the EEOC's notification of the right-to-sue.

**PARTIES**

9. Plaintiff Circello is a citizen of the United States and the State of New York, and resides at 174 Rich Avenue, Mount Vernon, New York, which is located in Westchester County.

10. Plaintiff Oliver is a citizen of the United States and the State of New York, and resides at 439 South 5th Avenue, Mount Vernon, New York, which is located in Westchester County.

11. Upon information and belief, defendant "CMSB" is a savings institution organized under the banking laws of the State of New York with its principle place of business located at 123 Main Street, White Plains, New York 10601.

12. Upon information and belief, defendant "CMSB" is an employer as defined in Title VII, the New York State Executive Law, the Age Discrimination in Employment Act ("ADA") and the Fair Labor Standards Act.

13. Upon information and belief, the defendant is engaged in an industry affecting commerce within the meaning of the Civil Rights Act of 1964. 42U.S.C. 2000e(h).

14. At all relevant times herein, plaintiff Circello is a non-exempt employee of defendant as defined by the FLSA.

15. At all relevant times herein, plaintiff Oliver is a non-exempt employee of defendant as defined by the FLSA.

# FACTS

A. <u>Maria A. Circello</u>

16. Plaintiff Circello was first employed by defendant from April 25, 1967 to about 1970 as an auditor. From 1970 to about 1985, Circello held various teller positions. On or about 1985 plaintiff Circello was promoted to Platform Assistant, and then on or about 1986 Circello was promoted to Assistant Treasurer, a position she held until March 26, 2006 when she was demoted.

17. On or about March 26, 2006, plaintiff was demoted to the non-exempt position of Customer Service Representative or "CSR".

18. At the time of her demotion Circello was 67 ½ years of age and one of the oldest employees at the defendant bank.

19. As CSR, Circello was required to complete and file time cards which would determine her weekly compensation. Prior to becoming a CSR, plaintiff Circello was not required to complete time records.

20. As CSR, Circello was a non-exempt employee in that she was:

(a) not a bona fide executive, administrative or professional employee;

(b) plaintiff's weekly salary would be contingent upon the quantity and quality of the work preformed;

(c) plaintiff Circello had no authority to hire or fire;

(d) upon information and belief, based upon the custom and practices of the defendant, because of Circello's demotion to CSR, she was subject to deductions that placed Circello out of the exempt class of employees;

(e) plaintiff Circello did not have discretion in managing her time;

(f) plaintiff Circello did not have supervisory responsibility over other employees;

(g) as CSR, plaintiff Circello did not perform any discretionary tasks but generally performed purely mechanical tasks not involving independent discretion.

21. After being demoted and required to complete time cards which she was not previously required to do, plaintiff, as a non-exempt employee, was not paid for overtime for work in excess of 40 hours per week, on several occasions, including but not limited to the following:

(a) for the week ended June 9, 2006 plaintiff Circello worked 45.60 hours but was only compensated for 40 hours of work;

(b) for the week ended July 14, 2006 plaintiff Circello worked 47.10 hours from Monday to Friday and five hours on Saturday. However, Circello was only compensated at the rate of time and a half for the five hours worked on Saturday and not for the 7.10 hours worked overtime from Monday to Friday;

(c) upon information and belief, for the week ended June 30, 2006, plaintiff worked 43.05 hours from Monday to Friday and about five hours on Saturday. However, as a non-exempt employee, plaintiff Circello was not paid for the overtime she worked Monday through Friday (3.05 hours). Upon information and belief Circello was only paid for the hours she worked on Saturday.

22. On several occasions, Steven Kipp, a bank manager and Senior Vice President at the Mount Vernon branch of defendant, specifically ordered and instructed plaintiff Circello to alter, change and modify her time records, in violation of the relevant statutes and company policy, to

reflect the fact that plaintiff Circello did not perform duties for defendant in excess of 40 hours for the week.

23. Commencing prior to her forced resignation in August 2006, plaintiff Circello was subjected to a hostile work environment including but not limited to threats of termination and threats that her pension benefits that had already been vested, would be substantially reduced, if she remained employed.

24. On several occasions prior to her forced retirement, Steven Kipp, Senior Vice President at defendant bank and her immediate superior, in addition to threatening to fire plaintiff, humiliated her in front of customers of the bank and fellow colleagues.

25. In addition to verbally humiliating plaintiff Circello, upon information and belief, the bank reduced plaintiff's lunch period from 60 minutes to 30 minutes, yet did not compensate plaintiff for the additional time worked, in violation of the FLSA.

26. Furthermore, plaintiff Circello and others were advised not to schedule doctor's appointments during working hours, which had previously been permitted, or assume the risk of the employee's pay being reduced for the time taken.

27. Because of the demotion to CSR, plaintiff's 2006 salary increase was reduced from 4% per annum, to 1% per annum.

28. Prior to her forced resignation, plaintiff Circello was advised that the defendant was going to change its pension benefits from 50% of the average of the last five years to 10-20% of the average of the previous five years.

29. Managers at the defendant knew that plaintiff's pension benefits, after 39 years of employment, were of the utmost importance to Circello. Consequently, because of the threat of a reduced pension, Circello had no option but to retire years earlier than she intended.

30. Upon information and belief, at the time of her forced resignation plaintiff was the oldest employee at the defendant bank.

31. Upon information and belief, after misleading plaintiff about her reduced pension benefits and thus forcing plaintiff to retire prematurely, the defendant did not alter its pension plan as threatened.

32. Also, upon information and belief, plaintiff Circello was replaced by employees substantially younger than her.

B. <u>Mary Oliver:</u>

33. Plaintiff Oliver was first employed by defendant on or about 1969 as a Teller. She remained in that position until approximately 1979. From 1979 to her demotion in March 2006, plaintiff Oliver held many administrative positions.

34. In March 2006 at the age of 63, Oliver was demoted to the position of Customer Service Representative ("CSR"). At the time of her demotion Oliver was one of the oldest employees at the defendant bank.

35. As CSR, Oliver was a non-exempt employee in that she was:

    (a) not a bona fide executive, administrative or professional employee;

    (b) plaintiff's weekly salary would be contingent upon the quantity and quality of the work preformed;

    (c) plaintiff Oliver had no authority to hire or fire;

    (d) upon information and belief, based upon the custom and practices of the defendant, because of Oliver's demotion to CSR, she was subject to deductions that placed Oliver out of the exempt class of employees;

    (e) plaintiff Oliver did not have discretion in managing her time;

(f) Oliver did not have supervisory responsibility over other employees;

(g) as CSR, plaintiff Oliver did not perform any discretionary tasks but generally performed purely mechanical tasks not involving independent discretion.

36. Commencing prior to her forced resignation in August 2006, plaintiff Oliver was subjected to a hostile work environment including but not limited to threats of termination and threats that her pension benefits that had already been vested would be substantially reduced if she remained employed.

37. On several occasions prior to her forced retirement, Steven Kipp, Senior Vice President at defendant bank and her immediate superior, in addition to threatening to fire plaintiff, humiliated her in front of customers of the bank and fellow colleagues.

38. In addition to verbally humiliating plaintiff Oliver, upon information and belief the defendant bank reduced plaintiff's lunch period from 60 minutes to 30 minutes, yet did not compensate plaintiff for the additional time worked, in violation of the FLSA.

39. Furthermore, plaintiffs, and others, were advised not to schedule doctor's appointments during working hours, which had previously been permitted, or assume the risk of the employee's pay being reduced for the time taken.

40. Because of the demotion to CSR, plaintiff's 2006 salary increase was reduced from 4% per annum, to 1% per annum.

41. Prior to her forced resignation, plaintiff Oliver was advised that the defendant was going to change its pension benefits from 50% of the average of the last five years to 10-20% of the average of the previous five years.

42. Managers at the defendant knew that plaintiff's pension benefits, after 37 years of employment, were of the utmost importance to Oliver. Consequently, because of the threat of a reduced pension, Oliver had no option but to retire years earlier than she intended.

43. Upon information and belief, at the time of her forced resignation, Oliver was one of the oldest employees at the defendant bank.

44. Upon information and belief, after misleading plaintiff about her reduced pension benefits and thus forcing plaintiff to retire prematurely, the defendant did not alter its pension plan as threatened.

45. Also upon information and belief, plaintiff Oliver was replaced by employees substantially younger than her.

## AS AND FOR A FIRST CAUSE OF ACTION

46. Plaintiffs repeat, reallege and reiterate each and every allegation set forth in paragraphs "1" through "45" with the same force and effect as if fully set forth herein.

47. By the acts and practices described above, defendant discriminated against plaintiffs in the terms and conditions of their employment on the basis of their age.

48. Defendant acted with malice and reckless indifference to plaintiffs' rights under Title Vll.

49. Plaintiffs are now suffering and will continue to suffer monetary damages and irreparable injury, including mental distress, and other compensatory damages and humiliation, as a result of defendant's discriminatory conduct, unless and until this Court grants relief.

## AS AND FOR A SECOND CAUSE OF ACTION

50. Plaintiffs repeat, reallege and reiterate each and every allegation set forth in paragraphs "1" through "49" with the same force and effect as if fully set forth herein.

51. The defendant has violated the New York Executive Law §290 et seq., commonly known as the New York Human Rights Law, by discriminating against plaintiffs on the basis of their ages.

52. Defendant acted with malice and reckless indifference to plaintiffs' rights under Executive Law §290, et. seq.

53. As a result of defendant's discrimination against them, plaintiffs have suffered damages, including without limitation, deprivation of income and benefits, as well as emotional pain, suffering, inconvenience, mental anguish, humiliation, and damages to their reputations and careers.

## AS AND FOR A THIRD CAUSE OF ACTION

54. The plaintiffs repeat, reallege and reiterate each and every allegation set forth in paragraphs "1" through "53" with the same force and effect as if fully set forth herein.

55. As the plaintiffs' employer, the defendant has a duty to treat the plaintiffs in an honest, responsible, lawful, and non-negligent manner. Notwithstanding that obligation, the defendant breached its duty to plaintiffs by the unlawful demotion of the plaintiffs as set forth above.

56. A reasonably foreseeable consequence of the defendant's unlawful demotion of the plaintiff was the causation of severe emotional distress. The defendant knew or should have known that its action in unlawfully demoting the plaintiffs would unreasonably subject them to severe mental anguish and physical distress.

57. As set forth above, the plaintiffs in fact suffered severe emotional trauma as a direct result of the defendant's unlawful action. The emotional trauma suffered is genuine, substantial, and proximately caused by the defendant's negligent conduct.

## AS AND FOR A FOURTH CAUSE OF ACTION

58. The plaintiffs reassert and reallege the allegations contained in paragraphs "1" through "57" above as if they had been fully set forth herein.

59. As the plaintiffs' employer, the defendant has a duty to treat the plaintiffs in an honest, responsible, lawful, and non-negligent manner. Notwithstanding that obligation, the defendant breached its duty to plaintiffs by constructively discharging them as set forth above.

60. A reasonably foreseeable consequence of the defendant constructively discharging the plaintiffs was the causation of severe emotional stress. The defendant knew or should have known that its action unlawfully demoting the plaintiffs would unreasonably subject them to severe mental anguish and physical distress.

61. As set forth supra, the plaintiffs in fact suffered severe emotional trauma as a direct result of the defendant's unlawful action. The emotional trauma is genuine, substantial, and proximately caused by the defendant's negligent conduct.

62. As a result of the defendant's negligent infliction of emotional distress, the plaintiff suffered extreme emotional damage causing the plaintiffs to seek professional assistance for their mental anguish and pain.

## AS AND FOR A FIFTH CAUSE OF ACTION

63. The plaintiffs reassert and reallege the allegations contained in paragraphs "1" through "62" above as if they had been fully set forth herein.

64. By the acts and practices described above, defendant failed and refused to pay plaintiffs time and one half for hours worked in excess of 40 hours per week in violation of the Fair Labor Standards Act.

65. Defendant acted with malice and reckless indifference to plaintiffs rights under the Fair Labor Standards Act.

66. As a result of defendant's conduct toward plaintiffs in denying overtime compensation, they have suffered damage, including without limitation, deprivation of income and benefits, as well as emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to their reputation and careers.

## RELIEF REQUESTED

67. The plaintiffs request the Court to grant them the following relief:

    a. A declaratory judgment that the defendant's acts, policies, practices, and procedures complained of herein violated the plaintiffs rights as secured by the Age

Discrimination In Employment Act, Title VII and the New York State Human Rights Law, New York Executive Law §290 et seq.

   b. That the defendant be permanently and forever enjoined from any further prohibited discrimination against the plaintiffs;

   c. That the plaintiffs be awarded compensatory damages in an amount to be determined at trial, but not less than $750,000;

   d. That the plaintiffs be awarded punitive damages in an amount to be determined at trial, but not less than $3,000,000;

   e. That the plaintiffs be awarded reasonable attorney's fees, including litigation expenses and costs; and

   f. That the plaintiffs be granted such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
   August 1, 2007

          Yours, etc.,

          FONTANA & BRODERICK, LLP

          By: _____
          Vincent R. Fontana
          Attorneys for Plaintiffs
          1010 Franklin Avenue, Suite 200
          Garden City, NY  11530
          Tel:  (516) 640-4505
          Fax:  (516) 640-4983